**[J-20-2025] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| PUNXSUTAWNEY HUNTING CLUB, INC., AND PITCH PINE HUNTING CLUB, INC., | : | No. 23 WAP 2023 |
| | : | |
| | : | Appeal from The Order of the Commonwealth Court entered September 29, 2023, at No. 456 MD 2021. |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | ARGUED: April 9, 2025 |
| | : | |
| PENNSYLVANIA GAME COMMISSION, AND MARK GRITZER, IN HIS OFFICIAL CAPACITY AS AN OFFICER OF THE PENNSYLVANIA GAME COMMISSION, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellees | : | |

**CONCURRING OPINION**

**JUSTICE DONOHUE**                                              **DECIDED: JULY 21, 2026**

I join the Majority's opinion in full. I agree that *Commonwealth v. Russo*, 934 A.2d 1199 (Pa. 2007), was wrongly decided and that, in this context, Article I, Section 8 provides greater protection than the Fourth Amendment to the United States Constitution. As we stated in *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), Article I, Section 8 uses more expansive terminology than its federal counterpart, and "this difference in language suggests that the warrant requirement of Article I, Section 8 was intended to protect an individual's privacy interest in all of his or her possessions[.]" *Alexander*, 243 A.3d at 187 (quoting *Commonwealth v. Gary*, 91 A.3d 102, 143 (Pa. 2014) (Todd, J., dissenting)). In adopting Justice Todd's dissent from *Gary*, the *Alexander* Court authoritatively announced that Article I, Section 8's protection of "possessions" is broader

than the Fourth Amendment's protection of "effects." Because "possessions" clearly encompasses land, *Russo* must be overruled. Majority Op. at 73.

This case reaffirms the importance of giving "the Pennsylvania Constitution meaning, and unique meaning where appropriate." *Allegheny Reproductive Health Center v. Pennsylvania Dep't of Human Servs.*, 309 A.3d 808, 943 (Pa. 2024). Although much of the Majority's analysis is dedicated to giving meaning to Article I, Section 8, it also gives appropriate recognition to an equally significant provision of our Declaration of Rights, the Environmental Rights Amendment ("ERA") enshrined in Article I, Section 27. According to Section 27,

> [t]he people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, § 27.

I write to highlight the importance of treating the ERA on parity with other constitutional rights and to draw attention to the tools at the Game Commission's disposal to uphold its constitutional obligations to the citizens of Pennsylvania under the ERA.

The Majority recognizes that the ERA preserves citizens' interest in protecting and preserving wildlife. Majority Op. at 73. It opines that a balance must be achieved between the interest in protecting, preserving, and maintaining wildlife under the ERA and the interest in protecting privacy under Article I, Section 8. *Id*. at 73-75. The Majority concludes that recognition of a privacy interest in private land conspicuously posted with no trespassing signs and purple paint and/or bounded by fences, gates, and other structures will not unreasonably impede the Game Commission's ability to effectuate its

duties under the ERA to conserve, protect, and maintain wildlife. *Id*. at 75.[1] The Majority describes the investigative tools still available to the Commission's officers, and concludes that it is the weight and pull of Article I, Section 8 that requires realignment of our approach to the open fields doctrine, "not a diminution of the importance of our citizens' right to the conservation, maintenance, and protection of wildlife under the ERA." *Id*. at 75.

In the unique case where we address two competing constitutional rights, we must determine how to strike the constitutional balance and protect both rights. In *Norton v. Glenn*, 860 A.2d 48, 58 (Pa. 2004), referring to the possible conflict between the right to reputation and freedom of expression, the Court noted the "seesawing balance between the constitutional rights." When dealing with two competing rights, we must be careful not to treat either as second-class or inferior. *Id*.[2] With regard to the ERA in *Robinson Twp., Washington Cnty. v. Com.*, 83 A.3d 901, 954 (Pa. 2013) (plurality), three Justices of this Court observed that the ERA could "potentially compet[e] with, for example, property rights as guaranteed in Sections 1, 9, and 10." *Id*. While the ERA was not intended "to deprive persons of the use of their property," the exercise of other rights

---

[1] Within its discussion of the ERA, the Majority notes that "we cannot ignore constitutional commands … even if they make the work of police … harder." Majority Op. at 74 n. 22 (quoting *Alexander*, 243 A.3d at 198). In my view, the concern in the present case is not merely about making police work harder. Rather, we are addressing the possibility that in recognizing greater privacy protections, we may frustrate other constitutional protections which stand on equal footing. *Robinson Twp., Washington Cnty. v. Com.*, 83 A.3d 901, 960 (Pa. 2013) (plurality) (stating that "the Pennsylvania Constitution now places citizens' environmental rights on par with their political rights").

[2] *See also Driscoll v. Corbett*, 69 A.3d 197 (Pa. 2013) (referring to the balancing of the "constitutionally-grounded right of citizens to equal protection of laws, against the people's indefeasible right to amend their governing charter as they see fit"); *Commonwealth v. Hayes*, 414 A.2d 318, 328 (Pa. 1980) (Kauffmann, J., concurring) (explaining that, in addressing the right to public access to judicial proceedings and Sixth Amendment right to a fair trial, the correct approach is to remand for a hearing and "a careful balancing of these two competing constitutional rights").

"cannot take place at the expense" of the rights enshrined in the ERA. *Id.* Thus, where the ERA and other constitutional rights are at stake, we must take care that a balance is struck so one right is not seen as dominant and the other inferior. *Norton*, 860 A.2d at 58.

Ultimately in this case, we determine that the current balance, as declared in *Russo*, diminished the privacy rights of Pennsylvania's citizens. We conclude that a re-balancing is necessary to place these rights on equal footing and that prohibiting the Commission's warrantless searches of conspicuously posted or prohibitively bounded private property outside of curtilage will not diminish the protections afforded under the ERA. Majority Op. at 74-75. Pennsylvania Game Commission officials maintain authority to execute their constitutional duties under the ERA. With regard to posted, fenced land, Game Commission officials can procure warrants and may invoke an exception to the warrant requirement where applicable. Administrative searches are one such exception.

In its briefing, the Game Commission appears to confuse the open fields doctrine with the administrative search exception, the latter of which is not called into question by the Majority. For instance, the Game Commission cites *Department of Environmental Resources v. Blosenski Disposal Service*, 566 A.2d 845 (Pa. 1989), where this Court upheld provisions of the Solid Waste Management Act, 35 P.S. §§ 6018.101-1003, allowing warrantless searches of certain physical structures. The *Blosenski* Court stated that it was not an open fields doctrine case, and it held that the searches at issue were justified as administrative searches. *Id*. at 848-50 (stating that the warrantless inspection provisions were valid "warrantless administrative searches of commercial property") (quoting *Donovan v. Dewey*, 452 U.S. 594, 600 (1981) ("a warrant may not be constitutionally required when Congress has reasonably determined that warrantless searches are necessary to further a regulatory scheme and the federal regulatory

presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.")).

Historically, the administrative search exception has applied to, inter alia, liquor retailers, firearms dealing, mining, junkyards and commercial trucking. *Commonwealth v. Petroll*, 738 A.2d 993 (Pa. 1999) (finding that administrative search doctrine did not justify search of logbooks in commercial truck). This Court explained the three-prong test in *Commonwealth v. Maguire*, 215 A.3d 566 (Pa. 2019):

> warrantless searches of closely regulated businesses will be deemed reasonable if: (1) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection was made; (2) warrantless inspections are necessary to further that regulatory scheme; and (3) the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. "In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." [*Petroll*, 738 A.2d] at 1000-01 (quoting [*New York v. Burger,* 482 U.S. 691, 703 (1987)]).

*Maguire*, 215 A.3d at 575.[3] As for the administrative search exception, the ERA would likely inform any analysis involving conduct by the Game Commission when the court is addressing the existence of a "substantial government interest that informs the regulatory scheme pursuant to which the inspection was made." *Id*. Today's decision does not preclude administrative searches conducted pursuant to an appropriate statutory framework incorporating the limitations placed on administrative searches.

---

[3] Although a plurality in other respects, a majority of justices joined this section of the *Maguire* opinion.

Ultimately, the limitations on government intrusion imposed by Article, I, Section 8 do not clash with the Environmental Rights Amendment. As the Majority cogently explains, our decision today does not tip the balance in favor of individuals' rights to privacy on their property. It correctly gives effect to those rights while allowing the Game Commission to enforce the code and perform its duties as trustees of the environmental trust by operating within the confines of Article I, Section 8.

I join the majority decision.